IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

|  |  |  |
|---|---|---|
| LOGAN VINCENT LAND, | * | |
| | * | 3:21-cv-00051 |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | ORDER ON DEFENDANTS' |
| CITY OF KEOKUK, IOWA; and | * | MOTION FOR SUMMARY |
| OFFICER TANNER WALDEN, | * | JUDGMENT |
| In his Individual and Official Capacity, | * | |
| | * | |
| Defendants. | * | |
| | * | |

Before the Court is Defendant City of Keokuk, Iowa and Defendant Officer Tanner Walden's Motion for Summary Judgment, filed on July 21, 2022. ECF No. 26. Plaintiff Land filed a Resistance to Defendants' Motion on August 11, 2022. ECF No. 28. Defendants replied on August 19, 2022. ECF No. 31. Neither party has requested oral argument, and the Court does not believe that oral argument will substantially aid it in resolving the issues before the Court. The matter is fully submitted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The morning of June 7, 2019, Plaintiff was lying on a bench in Rand Park in the City of Keokuk, Iowa, "enjoying the morning sunrise." ECF No. 1 ¶ 10; ECF No. 26-2 ¶ 13. Plaintiff's presence at the park was during its posted public opening hours. ECF No. 26-2 ¶ 15. At the same time, Assistant Chief of Police D.J. Whitaker for City of Keokuk Police Department (KPD) was enjoying a walk through the park. ECF No. 26-3 at 21 ¶ 6. Whitaker had walked through the park each morning before the start of his shift for over fifteen years. *Id.* That morning, he noticed Plaintiff lying down on a park

bench near the Mississippi River, and from what he could tell, Plaintiff appeared to be sleeping. *Id.* at 21 ¶ 7. Whitaker had never seen anyone sleeping on a park bench during his morning walks. *Id.* According to Whitaker, he was concerned because Rand Park is considered "a safe, well-kept, and nice park." *Id.* ¶ 13. He decided to continue walking and circle back to the area prior to the conclusion of his walk. *Id.* ¶ 11. After he finished walking, Plaintiff was still lying on the park bench, which caused Whitaker to believe a welfare check was necessary. *Id.* ¶ 12. Whitaker was not on duty, so he contacted the KPD Captain, who then sent two KPD officers—Officers Walden and Marroquin—to the park to conduct a welfare check. *Id.* at 22 ¶ 14; *id.* at 9 ¶¶ 9–10.

Defendant Walden arrived at the park five minutes later in full uniform and in a marked police vehicle, followed by Marroquin. *Id.* at 16 ¶ 12. According to the police report, Defendant Walden saw Plaintiff and "found it odd that an individual would be sleeping on a park bench and thought [Plaintiff] may be having a medical issue or be intoxicated." *Id.* at 3. Upon arrival, he noticed Plaintiff was wearing a white t-shirt, a ball cap, and "sitting on the park bench closest to the flag pole." *Id.* Plaintiff also had a bottle of water, a soda, and a backpack next to him that "appeared to be stuffed full." *Id.* Plaintiff appeared disheveled and homeless according to Defendant Walden—although this description is strongly disputed by Plaintiff—and thus likely to be experiencing a mental or physical health crisis. *Compare id.* at 17 ¶¶ 16–17 *with* ECF Nos. 28-1 at 1–2 ("Plaintiff was appropriately dressed," and "did not have items with him that would have suggested he was living or trying to live in the park.") and 28-2 ¶¶ 26–28 ("Plaintiff was not disheveled," "did not appear homeless," and "the [body camera] video does not show anything that would demonstrate a mental or physical health crisis."). Defendant Walden

also noted odd discoloration on Plaintiff's arm, which was actually a birthmark.  ECF No.

28-1 at 2.  Defendant Walden's body camera video recorded what happened next:

> DEFENDANT WALDEN:  What's going on man?  Hey, we took a call saying you might be sleeping out here?
>
> PLAINTIFF:  No, I was just laying down for a minute . . .
>
> DEFENDANT WALDEN:  Oh, ok.
>
> PLAINTIFF:  Laying on my back . . . .
>
> DEFENDANT WALDEN:  Oh ,ok.
>
> PLAINTIFF:  Looking at the sky . . . .
>
> DEFENDANT WALDEN:  Ok.  You got your ID with ya?
>
> PLAINTIFF:  No, I don't.
>
> DEFENDANT WALDEN:  Ok.  What's your name, man?
>
> PLAINTIFF:  Am I doing something illegal?
>
> DEFENDANT WALDEN:  Well, we got called here for a suspicious activity, so I gotta ID ya.
>
> PLAINTIFF:  Is that a misdemeanor or a felony?
>
> DEFENDANT WALDEN:  Huh?
>
> PLAINTIFF:  Is that a misdemeanor or a felony?
>
> DEFENDANT WALDEN:  Is it a misdemeanor or a felony?  Well, it could be a misdemeanor if you failure [sic] to identify yourself.

ECF No. 26-3, Defendant Walden's Body Camera Video at 16:18:10–16:18:47.

At this point, Marroquin had arrived on scene and was standing opposite of

Defendant Walden near the park bench where Plaintiff was seated.  *Id.*  Marroquin

continued watching Defendant Walden and Plaintiff conversing.  ECF No. 26-3 at 12 ¶ 9.

Defendant Walden argues that after Plaintiff refused to identify himself, he started to

"believe that [Plaintiff] may be evading an active warrant" or "unlawfully in the park, and/or may be in the process of committing a crime." ECF No. 26-2 ¶ 36. Defendant Walden and Plaintiff continued their conversation:

> PLAINTIFF: Well, unless I am breaking the law I am not going to ID.

> DEFENDANT WALDEN: Ok, so you're choosing to get arrested instead of just giving me your name?

> PLAINTIFF: I am choosing to not break the law, which I am not doing . . . am I breaking the law?

> DEFENDANT WALDEN: By not giving me your identification, yes, you are.

> PLAINTIFF: See, that's not the way it works.

> DEFENDANT WALDEN: Yes, that's interference.

> PLAINTIFF: Are you detaining me, or am I free to go?

> DEFENDANT WALDEN: No, you're being detained.

> PLAINTIFF: For what?

> DEFENDANT WALDEN: Because we're investigating suspicious—

> PLAINTIFF: Ok, then you need to give me reasonable articulable suspicion.

> DEFENDANT WALDEN: We got called here by a third-party.

> PLAINTIFF: Right. Well . . .

> DEFENDANT WALDEN: For an individual sleeping by the flagpole.

> PLAINTIFF: Ok.

> DEFENDANT WALDEN: You're the only person here by the flagpole.

> PLAINTIFF: Well, did you see me sleeping?

> DEFENDANT WALDEN: No. You just admitted to me that you were.

> PLAINTIFF: I wasn't—I never said anything about sleeping. I said I was laying on my back and I was looking at the sky.

> DEFENDANT WALDEN: Ok.
>
> PLAINTIFF: Is that illegal?
>
> DEFENDANT WALDEN: No.  But I—we still got called here so we got to investigate it.
>
> PLAINTIFF: Ok, well you call them back and tell them I wasn't sleeping.
>
> DEFENDANT WALDEN: Ok, so are you going to give me your name, or not?
>
> PLAINTIFF: No, I'm not.

ECF No. 26-3, Defendant Walden's Body Camera Video at 16:18:48–16:19:41.  The parties dispute Plaintiff's demeanor at this point in the conversation.  *See* ECF No. 26-3 at 7 ¶ 35.  Defendants claim Plaintiff was "uncooperative, argumentative, and hostile" in refusing to provide his identification, and Plaintiff argues he properly responded to Defendant Walden's concerns in accordance with his constitutional rights.  *Compare id.* at 17 ¶ 23 ("The male subject became increasingly argumentative and agitated at me.") *with* ECF No. 28-2 ¶¶ 29, 35 ("Plaintiff properly responded" and "the characterization of the Plaintiff's conduct [is denied].").  Seconds later, Plaintiff was placed under arrest by Defendant Walden for what he believed was Plaintiff's interference with official acts by refusing to provide identification when requested.  ECF No. 26-3, Defendant Walden's Body Camera Video at 16:19:41–16:19:49.

Marroquin immediately transported Plaintiff to the KPD while Defendant Walden searched Plaintiff's belongings incident to arrest.  ECF No. 26-3 at 4.  Drug paraphernalia was located in Plaintiff's backpack.  *Id.*  KPD Officers later identified Plaintiff as Logan Land after he was transported to the Lee County, Iowa Correctional Facility.  ECF No. 26-2 ¶ 43.  Plaintiff was charged with interference with official acts, in violation of Iowa

Code section 719.1, and possession of drug paraphernalia, in violation of section 124.414.  ECF No. 26-3 at 4.  The Court takes judicial notice that the interference and drug paraphernalia charges filed against Plaintiff were dismissed in state court following a bench trial.  *State v. Logan Land*, No. SMSM019425 (Iowa Dist. Ct. Aug. 27, 2019); *see also* ECF No. 28-2 ¶ 44 (stating Plaintiff was acquitted of the interference charge).

Plaintiff is suing Defendants for violating his constitutional and civil rights under 42 U.S.C. § 1983.  ECF No. 1.  In Count One of Plaintiff's Complaint, he alleges Defendant Walden violated his clearly established right under the Fourth Amendment to be free from unreasonable seizure.[1]  *Id.* ¶¶ 19–24.  In Count Two, Plaintiff claims Defendant City's deliberate indifference, failure to train and supervise its officers, as well as its policies, practices, and customs caused the violation of Plaintiff's rights.  *Id.* ¶¶ 25–31.  Plaintiff claims he suffered physical and mental pain and suffering as a result of Defendants' actions, as well as "past and future loss of enjoyment of life."  ECF No. 1 at 6.  Plaintiff seeks declaratory relief, monetary damages, and attorney's fees and costs against Defendants, as well as punitive damages against Defendant Walden.  Defendants move for summary judgment on all claims.  ECF No. 26.  Defendant Walden argues his individual actions are protected by qualified immunity, and Defendant City argues it cannot be held liable for any violation of Plaintiff's rights under § 1983.  ECF No. 26-1 at 14.  Plaintiff resists Defendants' Motion and argues summary judgment must be denied.  ECF No. 28.

---

[1] Defendants' brief argues against an excessive-force claim.  ECF No. 26-1 at 5–7.  But Plaintiff never pleaded an excessive-force claim.  Defendant's briefing misconstrues Plaintiff's unreasonable-seizure claim, which challenges the lack of reasonable suspicion or probable cause for Defendant Walden's investigative stop and arrest.  *See* ECF No. 28-1 at 3.  Thus, the Court will not address the lengthy excessive-force section of Defendants' brief.

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides, "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Rule 56(a) mandates the entry of summary judgment upon motion after there has been adequate time for discovery "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is "genuine" when the evidence produced "is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is considered "material" if it "might affect the outcome of the suit under the governing law."  *Id.*  "[T]he substantive law will identify which facts are material . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  Summary judgment is only appropriate when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows there is no genuine issue of material fact, and the moving party is therefore entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994).

## III.  ANALYSIS

Defendants argue summary judgment should be granted because there are no genuine disputes of material fact concerning the reasonableness of Plaintiff's seizure.  Defendants argue Defendant Walden had reasonable suspicion for an investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968).  Defendants also argue there was probable cause to arrest Plaintiff based on Defendant Walden's belief that Plaintiff had committed a crime.  Defendants further contend that if disputes of material fact exist, then Defendant Walden is entitled to qualified immunity

because he did not violate any clearly established law; or alternatively, he made an objectively reasonable mistake in good faith. Defendant City also argues that Plaintiff's § 1983 claim against it fails because there was no underlying constitutional violation by Defendant Walden. And, even if Plaintiff could prove such a violation, he cannot prove Defendant City's deliberate indifference was the cause.[2]

Plaintiff argues summary judgment should be denied because when the disputed facts are viewed in the light most favorable to him as the nonmoving party, a reasonable jury could find in his favor. According to Plaintiff, Defendant Walden violated clearly established law surrounding law enforcement requests for identification, reasonable suspicion, and probable cause, and therefore his qualified-immunity defense cannot stand. Additionally, Plaintiff argues Defendant City caused the violation of his clearly established rights by its deliberate indifference in failing to adequately train and supervise KPD officers.

The Court must decide whether there are any genuine disputes of material fact such that Plaintiff's claims survive Defendants' Motion. The substantive law underlying Plaintiff's claims determines which facts are material. *See Anderson*, 477 U.S. at 248. If a genuine dispute of fact exists as to any element essential to Plaintiff's constitutional and civil rights claims, then summary judgment ought to be denied and the case proceeds to trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, the Court will first address the substantive law surrounding Plaintiff's Fourth Amendment and civil-rights claims, including reasonable

---

[2] Defendants also argue that Plaintiff's responsive brief and statement of facts contain unsupported facts in violation of Local Rule 56. ECF No. 29-1. However, other than dismissal of the charges against Plaintiff in state court—information available to the public and of which the Court takes judicial notice—body camera footage is in the record. The body camera footage provided by Defendants is admissible evidence and Plaintiff uses it to support his version of the facts. While citations would have been proper and helpful, the Court does not find Plaintiff's arguments "self-serving," baseless, or unsupported by evidence in the record such that they should be stricken.

suspicion, probable cause, and qualified immunity for Defendant Walden. Then, the Court will address Plaintiff's claim against Defendant City under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). In each instance, the Court will determine whether Plaintiff's claims survive summary judgment given the substantive law controlling which facts are material to a judgment in this case.

### A.  Reasonable Suspicion

The Fourth Amendment guarantees all citizens protection against unreasonable seizures and requires probable cause for an arrest. U.S. Const. amend. IV. "This inestimable right of personal security [in the Fourth Amendment] belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study . . . ." *Terry*, 392 U.S. at 8–9. "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Id.* at 16.

Officers may conduct *Terry* stops, or brief investigative stops, on less than probable cause without violating the Fourth Amendment. *Id.* at 10–11. *Terry* stops are used "for questioning upon suspicion that [a person] may be connected with criminal activity." *Id.* "Asking questions is an essential part of police investigations." *Hiibel v. Sixth Jud. Dist. Ct. of Nevada*, 542 U.S. 177, 185 (2004). An officer can therefore ask a person for their identification during a *Terry* stop. *Id.* at 186. However, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983).

A mere "hunch" that a person is involved with criminal activity is not enough. *Terry*, 392 U.S. at 22. Nor is mere "good faith on the part of the arresting officer." *Id.* (citation omitted). Officers must instead "point to specific and articulable facts which, taken together

with rational inferences from those facts, reasonably warrant [an investigative stop]." *Id.* at 21. In assessing the reasonableness of a *Terry* stop, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure . . . 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.* at 21–22 (citation omitted). The reasonableness inquiry is twofold: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 19–20.

Officers who lack reasonable suspicion yet want to approach an individual on the street or in another public place and ask them questions do not necessarily violate the Fourth Amendment. *Royer*, 460 U.S. at 497; *Hiibel*, 542 U.S. at 185 (asking for identification can be accomplished "without implicating the Fourth Amendment"). "The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way." *Royer*, 460 U.S. at 497–98. "He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds." *Id.* at 498; *see also United States v. Sykes*, 914 F.3d 615, 618 (8th Cir. 2019) ("[A] person's decision during a consensual police encounter 'to ignore the police and go about his business' cannot [be considered in the reasonable-suspicion calculus].").

In *Brown v. Texas*, an individual was arrested for refusing to identify himself after he was stopped while walking through an alley in a "high drug area" at night. 443 U.S. 47, 49 (1979). He was arrested because the Texas Legislature made it a crime for an individual to refuse to provide identification to an officer who had reasonable suspicion of criminal activity. *Id.* at 49. The Supreme Court held Brown's Fourth Amendment rights were violated because officers

lacked reasonable suspicion to stop and investigate him, and thus could not demand his

identification. *Id.* at 51–52. The Court concluded his "activity was no different from the activity

of other pedestrians in that neighborhood." *Id.* at 52. Angrily protesting the reasons for the

unlawful stop, and refusing to identify himself, could not justify the officers' reasonable

suspicion. *Id.* "[T]he guarantees of the Fourth Amendment" do not allow officers to "demand[]

identification from an individual without any specific basis for believing he is involved in

criminal activity." *Id.* And "[n]one of the circumstances preceding the officers' detention of

[Brown] justified a reasonable suspicion that he was involved in criminal conduct." *Id.* at 51–52.

Therefore, the court concluded "the balance between the public interest and [Brown]'s right to

personal security and privacy tilts in favor of freedom from police interference." *Id.* at 52.

In this instance, unlike in *Brown*, Iowa does not have a criminal statute requiring citizens

to comply with law enforcement demands for identification on less than probable cause.

However, the underlying constitutional concerns regarding Defendant Walden's actions are

similar to those in *Brown*. Like *Brown*, the central problem in this case is whether Defendant

Walden had reasonable suspicion to stop Plaintiff, and whether he could demand Plaintiff's

identification on less than probable cause.

It is undisputed that off-duty KPD Assistant Chief Whitaker thought he saw Plaintiff

sleeping on a park bench, so he requested a welfare check by on-duty KPD officers. At the

inception of this interaction, Defendant Walden was conducting a welfare check. The welfare

check did not require reasonable suspicion or probable cause. However, once Plaintiff assured

Defendant Walden that he was neither sleeping in the park, nor in any obvious mental or

physical distress, the initial purpose for approaching Plaintiff concluded. Defendant Walden

then asked Plaintiff for identification, likely in hopes that Plaintiff would voluntarily respond.

Plaintiff did not have his identification with him and refused to provide his name. At that point, Plaintiff had a constitutional right to refuse to provide his name and could "go on his way." *Royer*, 460 U.S. at 497–98. Defendant Walden instead told Plaintiff he was called to investigate a suspicious person near the flagpole and instructed Plaintiff he was not free to leave—transitioning the interaction into a *Terry* stop.

Defendant Walden does not allege facts indicating a concern for his own safety while Plaintiff sat on the park bench, nor does he argue criminal activity nearby, or dangerous weapons suspected on Plaintiff's person. *See Terry*, 392 U.S. at 23; *El-Ghazzawy v. Berthiaume*, 636 F.3d 452 (8th Cir. 2011) (determining officer's conduct was neither reasonably necessary for personal safety nor necessary "to maintain the status quo," so *Terry* stop was unjustified). The objective circumstances that Defendant Walden relied on to justify his suspicions include several facts in dispute. For example: (1) whether Plaintiff was sleeping on the park bench; (2) whether Plaintiff was argumentative, uncooperative, and hostile versus simply protesting his rights; (3) whether Plaintiff appeared disheveled, homeless,[3] and likely to be having a mental health crisis; and (4) whether the nice, well-kept park's proximity to schools could contribute to any reasonable suspicion that Plaintiff was involved in criminal activity. These facts are all necessary in considering the totality of the circumstances justifying Defendant Walden's reasonable suspicion. Though the Court is not persuaded that appearing homeless in a public park during the day would have made it any more likely that criminal activity was afoot. *See, e.g.*, *United States v. Brignoni-Ponce*, 422 U.S. 873, 886–87 (1975) (concluding that a person's appearance might be "a relevant factor, but standing alone it does not justify stopping [all individuals with that characteristic]" and suspecting them of a crime). Nor is the Court convinced that society has

---

[3] According to Plaintiff, homelessness is not grounds for reasonable suspicion as it is not a crime—"[Plaintiff] is allowed to be homeless—even though he was not homeless." ECF No. 28-1 at 3.

a legitimate interest in requiring the seizure of an individual with those specific characteristics, regardless of how well-kept the park might be. *See Brown*, 433 U.S. at 49. Ultimately, these are disputed facts for the jury to determine and consider collectively.

In summary, whether Plaintiff was lawfully detained turns on genuine disputes of material fact surrounding the circumstances and inferences that Defendant Walden could reasonably have relied on in detaining Plaintiff and demanding his identification. At summary judgment, factual disputes are viewed in the light most favorable to Plaintiff as nonmovant and he is given the benefit of all reasonable inferences. The body camera footage supports Plaintiff's interpretation of the facts. When the facts are viewed in Plaintiff's favor, he demonstrates a reasonable jury could conclude Defendant Walden did not have any reasonable, articulable suspicion for a *Terry* stop because he relied on Plaintiff's refusal to provide identification, rather than any facts indicating criminal behavior. Under the Fourth Amendment, Plaintiff's refusal to provide identification does not by itself provide grounds for reasonable suspicion. *See Brown*, 443 U.S. at 52. Viewing the facts in Plaintiff's favor, the circumstances would not warrant an officer of reasonable caution in the belief that his actions were lawful. Considering the public interest and Plaintiff's "right to personal security and privacy," the balance tilts in Plaintiff's favor to be free "from police interference." *Id.* Defendant Walden thus deprived the Plaintiff of his constitutional right against unreasonable seizure.

### *B. Probable Cause*

Even if an initial stop is unlawful, probable cause for an arrest may develop during the course of an interaction with law enforcement officers due to independent actions taken by a suspect. For example, a suspect's flight, resistance to arrest, or an officer's discovery of evidence of a separate crime, can provide independent probable cause for a lawful arrest. *See*

*United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995).  In *United States v. Dawdy*, the Eighth Circuit concluded, "[t]he struggle that ensued when the state trooper attempted to handcuff [the suspect] . . . would provide a reasonable police officer with probable cause for an arrest under Iowa law." *Id.*  But mere refusal to provide identification when the request is not reasonably related to the scope of the circumstances justifying the stop, does not provide probable cause for an arrest.  *See Hiibel*, 542 U.S. at 188–89.

Here, Defendants argue Plaintiff's refusal of Defendant Walden's "minor and reasonable request for identification . . . led [Defendant] Walden to develop probable cause."  ECF No. 26-1 at 12.  Defendants further argue Defendant "Walden had probable cause when [Plaintiff] violated Iowa Code section 719.1," as Plaintiff "hindered [Defendant] Walden in the course of his duties."  *Id.* at 13–14.  Plaintiff argues he was not violating any law by refusing to provide his name and there was no probable cause for his arrest.  When Plaintiff inquired into which law he was violating, and whether it was a misdemeanor or a felony to refuse to provide his name, Defendant Walden incorrectly told Plaintiff it could be a misdemeanor.  ECF No. 26-3, Defendant Walden's Body Camera Video at 16:18:44 ("Well, it could be a misdemeanor if you failure [sic] to identify yourself.").  Defendant Walden then threatened to arrest Plaintiff, saying "so you're choosing to get arrested instead of just giving me your name?" *Id.* at 16:18:54.

Defendant Walden's alleged probable cause for arresting Plaintiff was interference with official acts under Iowa Code section 719.1—a simple misdemeanor.  But here the "interference" was merely objecting to providing his name, which Plaintiff had no legal obligation to provide in the first instance.  *See, e.g.*, *Webster v. Westlake*, 41 F.4th 1004, 1010 (8th Cir. 2022) ("Iowa Code [s]ection 719.1(1)(a) requires 'active interference'—mere objection or failure to cooperate with officers is not enough.").  The Court concludes Plaintiff was not violating any Iowa law by

refusing to provide his name.  The Court also takes judicial notice that the underlying

interference charge was dismissed in state court.  *See Land*, No. SMSM019425.  Viewing the

disputed facts about Plaintiff's reactions in the light most favorable to Plaintiff, a jury could find

based on video evidence that Plaintiff was neither hostile, evasive, nor resisting arrest.  During

the stop, Plaintiff remained seated on the park bench and did not attempt to flee or threaten to use

violence.  Thus, there was no independent action by Plaintiff giving rise to Defendant Walden's

probable cause.  For these reasons, Plaintiff's unreasonable-seizure claim in Count One of his

Complaint against Defendant Walden survives summary judgment.

### *C.  Qualified Immunity*

Next, Defendant Walden argues his individual actions were in good faith and are

protected by qualified immunity.  "[G]overnment officials performing discretionary functions

generally are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Whether the facts alleged support a

claim for violation of a clearly established right at the time an action occurred is a legal question

for the court to determine at summary judgment.  *Id.*; *Brown v. City of Golden Valley*, 574 F.3d

491, 499 (8th Cir. 2009).  This step in the analysis "is a fact-intensive inquiry and must be

undertaken in light of the specific context of the case, not as a broad general proposition."

*Seymour v. City of Des Moines*, 519 F.3d 790, 798 (8th Cir. 2008).  "In determining whether a

right is clearly established, [a court] ask[s] whether it would be clear to a reasonable officer that

his conduct was unlawful in the situation he confronted."  *Frye v. Kansas City Mo. Police Dep't*,

375 F.3d 785, 789 (8th Cir. 2004).  "Where an official could be expected to know that certain

conduct would violate statutory or constitutional rights, he should be made to hesitate; and a

person who suffers injury caused by such conduct may have a cause of action." *Harlow*, 457 U.S. at 819.

Here, Defendant Walden could be expected to know that his conduct violated Plaintiff's constitutional rights under the Fourth Amendment. Supreme Court cases like *Terry*, *Brown*, *Hiibel*, and *Royer* were all decided well before the 2019 stop in this case. Precedent should have at least given Defendant Walden pause regarding his reasonable suspicion for the stop. But Defendant Walden went so far as to arrest Plaintiff for failure to identify himself, despite clearly established law requiring probable cause.[4] Good faith does not protect Defendant Walden's actions because with his training and experience—and common-sense inferences—he should have known that refusing to provide identification cannot provide reasonable suspicion of criminal activity and it does not violate Iowa law. *E.g.*, *State v. Hauan*, 361 N.W.2d 336, 340 (Iowa Ct. App. 1984) ("We note there have been cases where refusal to identify oneself amounts to obstructing justice. But in each of these cases there was probable cause to believe the defendant was involved or connected to some criminal activity.").

While material facts about the circumstances surrounding Defendant Walden's *Terry* stop are in dispute, for purposes of this Motion, these facts are viewed in Plaintiff's favor. Under clearly established law, Defendant Walden lacked the reasonable suspicion necessary to initially stop and detain Plaintiff, and he further lacked probable cause to arrest Plaintiff. Therefore, he

---

[4] Defendants cite to a traffic-stop case, *De La Rosa v. White*, 852 F.3d 740, 745–46 (8th Cir. 2017), for the proposition that Defendant Walden possessed "arguable reasonable suspicion" for qualified immunity. The objective facts relied on in *De La Rosa* made the reasonable-suspicion analysis "a close question." *Id.* at 747. Here, unlike in *De La Rosa,* it is not a close call: viewing the facts and inferences in Plaintiff's favor there was no "arguable" reasonable suspicion that Plaintiff was violating Iowa law or engaged in criminal activity. Merely refusing to provide identification cannot justify an officer's belief that criminal activity is afoot. The same applies to Defendant's "arguable" probable-cause claim under *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005), because even if Defendant Walden was mistaken, the mistake was not objectively reasonable.

cannot "claim qualified immunity in this case because he failed to follow clearly established constitutional law of which he should have known." *Field v. City of Omaha*, 810 F.2d 830, 835 (8th Cir. 1987). Finally, whether Defendant Walden's conduct in his individual capacity was willful or wanton for purposes of punitive damages, is a fact to be resolved by the jury at trial. *Brown*, 574 F.3d at 501.

### D.  Monell *Liability*

Next, Plaintiff argues a § 1983 claim against Defendant City under *Monell*. Plaintiff contends Defendant City had polices, practices, customs, and usages that were the direct and proximate cause of the violation of his federal rights. Additionally, according to Plaintiff, Defendant City was deliberately indifferent to the effect of its unconstitutional polices. Plaintiff claims that several KPD officers involved in his arrest participated in the violation of his rights, and accordingly, Defendant City failed to properly train and supervise its officers. Plaintiff contends that had Defendant City properly trained and supervised its officers, he would not have been unlawfully detained or arrested. In sum, Plaintiff argues Defendant City's actions were deliberately indifferent and thus a direct and proximate cause of the violation of his rights.

Defendant City counters that even assuming Defendant Walden's actions were unlawful, there is no evidence that any KPD policy or practice caused the constitutional violation in this case. Additionally, Defendant City argues no evidence exists showing deliberate indifference as to the KPD officers' training or supervision. For these reasons, Defendant City argues it cannot be held liable under *Monell*.

*Monell* liability attaches under § 1983 when a municipal government subjects an individual or causes that individual to be subjected to a deprivation of federal rights. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988). *Monell* rejects any theory of *respondeat superior*

liability and instead holds municipalities "responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights." *Id.* *Monell* claims are unique in that they have a "state of mind" or intent-based requirement. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). Thus, "proof that a municipality's legislative body or authorized decisionmaker has *intentionally* deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Id.* (emphasis added). Additionally, "the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury." *Id.* While a pattern or practice of violating citizens' rights is often used to establish the intentionality requirement, municipal decisionmakers can also be held liable for actions taken "on a single occasion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 471, 481 (1986); *but see Connick v. Thompson*, 563 U.S. 51, 67 (2011) (concluding that if a single occasion is the basis for establishing an intentional municipal action, then it must be exceptional).

Because *Monell* claims have "rigorous standards of culpability and causation," the burden of proof is difficult to satisfy. *Brown,* 520 U.S. at 405. The high standard is meant "to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* Suffering a deprivation of constitutional or civil rights at the hands of law enforcement officers "will not alone permit an inference of municipal culpability and causation." *Id.* at 406–07. "[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Id.* at 407.

Deliberate indifference can be established if there was a conscious decision not to train law enforcement officers in an area of law which caused a constitutional violation, as this tends to show "'deliberate indifference' to the obvious consequence of the policymakers' choice." *Id.* at 409–10; *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  However, the consequences of such inadequate training must be "so predicable" and so likely to reoccur, that the officers' obvious lack of "specific tools to handle that situation" will continue to violate the rights of the citizens with whom they come into contact.  *Brown*, 520 U.S. at 409–10.  In other words, the violation of a person's rights is a foreseeable consequence of the city's inaction.  A failure to train then becomes "a shortcoming . . . properly thought of as a city 'policy or custom.'" *Canton*, 489 U.S. at 388–89.  Even so, "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *Canton*, 489 U.S. at 387.

In *Atkinson v. City of Mountain View*, the Eighth Circuit granted summary judgment on a *Monell* claim in part because the plaintiff failed to specify which of the municipality's policies, practices, customs, and usages were the "moving force" behind the plaintiff's excessive-force claim.  709 F.3d 1201, 1216 (8th Cir. 2013).  Thus, the only way to hold the municipality liable was to prove it was "deliberately indifferent" to the known or obvious consequences of its inaction. *Id*.  Given the rigorous deliberate-indifference standard, even with all reasonable inferences drawn in the plaintiff's favor, the "bare allegation" presented was "patently insufficient" to survive summary judgment. *Id.*  There was no evidence or instances of city officers violating the rights of other citizens in the same manner. *Id.*  The court thus concluded that, "[b]ecause no reasonable jury could find the city had notice that its lack of written use-of-force policies was likely to result in a constitutional violation, the city's failure to adopt such policies does not create a genuine dispute of material fact." *Id.*  The *Atkinson* court also granted

summary judgment on the failure-to-train claim against the municipality because the plaintiff "presented no evidence indicating the city had reason to believe, before the events giving rise to this case, that its training or supervision of [the officer] was inadequate." *Id.* at 1217.  And, "[a]bsent some form of notice, the city cannot be deliberately indifferent to the risk that its training or supervision of [the officer] would result in 'a violation of a particular constitutional or statutory right.'"  *Id.* (quoting *Brown*, 520 U.S. at 411).

In this instance, Plaintiff uses the single occurrence of Defendant Walden's alleged violation of his constitutional rights to prove Defendant City's deliberate indifference.  This comes too close to *respondeat superior* liability, which is impermissible under *Monell*.  *See Praprotnik*, 485 U.S. at 122; *Pembauer*, 475 U.S.at 406–07.  Like *Atkinson*, Plaintiff fails to point to any specific policy, practice, custom, or usage that is facially unconstitutional or the "moving force" behind the violation.  709 F.3d at 1216.  Thus, the only way to hold Defendant City liable would be to prove Defendant City was "deliberately indifferent" to the known or obvious consequences of its action or inaction.  *Id*.  There is no evidence in the record before the Court that Defendant City knew of any unlawful seizures occurring based on a person's refusal to provide identification prior to this incident, or related complaints by citizens.  Given the rigorous deliberate-indifference standard, even when all reasonable inferences are drawn in Plaintiff's favor, the "bare allegation" of deliberate indifference here is "patently insufficient." *Id*.  No reasonable jury could find Defendant City had notice that it was lacking in its policies or enforcing policies likely to result in the alleged deprivation of Plaintiff's rights.  *Id.*  And, mere "failure to adopt such policies does not create a genuine dispute of material fact" to survive summary judgment.  *Id.*

Further, Plaintiff's claim for failure to train and supervise against Defendant City cannot survive summary judgment because Plaintiff provides "no evidence indicating the city had reason to believe, before the events giving rise to this case, that its training or supervision of [KPD officers] was inadequate." *See id.* at 1217. Plaintiff relies on the single instance that occurred here to prove his claims against Defendant City, but the Court concludes this is insufficient evidence of inadequate training or supervision. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton*, 489 U.S. at 390–91. Plaintiff does not indicate what training was lacking, and vaguely concludes that Defendant City consciously chose "not to have these officers trained as to how to avoid violating a person's constitutional rights under these circumstances." ECF No. 28-1 at 9. Defendant City presents several affidavits stating its officers were adequately trained and supervised, and thus any lack of training was not obvious or foreseeable. *See* ECF No 26-3. Defendant Walden also states there were no prior complaints or litigation against him related to unlawful seizures. *Id.* at 15 ¶ 4. "Absent some form of notice, the city cannot be deliberately indifferent to the risk that its training or supervision of [KPD officers] would result in 'a violation of a particular constitutional or statutory right.'" *Atkinson*, 709 F.3d at 1217 (quoting *Brown*, 520 U.S. at 411). Therefore, Plaintiff's *Monell* claim against Defendant City for failure to train and supervise KPD officers does not amount to a deliberately indifferent policy, practice, or custom that caused the violation of Plaintiff's rights, and without any genuine dispute for the jury to determine it cannot survive summary judgment.

In conclusion, the Court denies Defendants' Motion for Summary Judgment on Count One of Plaintiff's Complaint as to Defendant Walden's alleged violation of Plaintiff's rights

under § 1983.  This case shall proceed to trial on the claims pleaded under Count One.  The Court grants Defendants' Motion as to Count Two of Plaintiff's Complaint because a reasonable jury—even after viewing the facts and inferences in the light most favorable to Plaintiff—could not find Defendant City liable under *Monell*.

## IV.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 26) is DENIED as to Count One of Plaintiff's Complaint against Defendant Walden and GRANTED as to Count Two of Plaintiff's Complaint against Defendant City.  The Court will contact the parties to schedule a status conference regarding moving the September 2023 jury trial in this matter to an earlier date.

IT IS SO ORDERED.

Dated this 26th day of October, 2022.

ROBERT W. PRATT, Judge
U.S. DISTRICT COURT